IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANTHONY E. JOSEPH,<br><br>Plaintiff,<br><br>v.<br><br>CINNAMON HILLS YOUTH CRISIS CENTER, a Utah corporation; BUFF L. WILLIAMS, an individual; JANE DOES I-V, ABC CORPORATIONS I-V, and XYZ PARTNERSHIPS I-V,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [18] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:12-cv-790-DN<br><br>District Judge David Nuffer |

Defendants Cinnamon Hills Youth Crisis Center ("Cinnamon Hills") and Buff L. Williams ("Williams") (collectively "Defendants") move for summary judgment[1] against Plaintiff Anthony E. Joseph ("Joseph") on all claims asserted in his complaint.[2] Joseph opposes Defendants' motion.[3] Having reviewed the parties' memoranda, the facts of this case, and the relevant legal authorities, Defendants' motion is GRANTED IN PART and DENIED IN PART. For the reasons set forth in greater detail below, summary judgment is entered against Joseph on all of his claims, with the exception of his assault and battery causes of action against Williams. Disputed issues of material fact preclude summary judgment on those claims.

## BACKGROUND

Cinnamon Hills is a fully accredited secondary school and residential treatment facility for troubled and disabled youth located in St. George, Utah. In 2005, Joseph began his

---

[1] Docket no. 18, filed September 4, 2013.

[2] Docket no. 3-1, filed in the Fifth Judicial District Court in and for Washington County, State of Utah, on July 25, 2012, and removed to this court on August 13, 2012.

[3] Opposition to Defendants' Motion for Summary Judgment ("Opposition"), docket no. 19, filed October 2, 2013.

employment with Cinnamon Hills as an Academic Assistant, and after obtaining his Utah teaching certificate, taught physical education. In 2009, Williams became Director and Chairman of the Board at Cinnamon Hills.

Joseph alleges that after Williams became the Director and Chairman of the Board, the working environment at Cinnamon Hills deteriorated. He claims that Williams began to verbally and physically assault him, targeting him because he was not a member of the Church of Jesus Christ of Latter-day Saints like Williams. Joseph contends that he became the subject of religious discrimination in violation of Title VII and that the work environment became so hostile he was forced to resign. Joseph brought suit against Defendants alleging six causes of action in his complaint, including: assault (against Williams), battery (against Williams), religious discrimination in violation of Utah Code Ann. § 34A-5-106 and Title VII of the Civil Rights Act of 1964 (against Cinnamon Hills and Williams), constructive wrongful termination in violation of Utah Code Ann. § 34A-5-106 and Title VII of the Civil Rights Act of 1964 (against Cinnamon Hills), constructive wrongful termination in violation of public policy (against Cinnamon Hills), and intentional infliction of emotional distress (against Cinnamon Hills and Williams).

Defendants dispute Joseph's recitation of the events leading to his resignation but not in ways material to decision of this motion as to most of Joseph's claims. Defendants argue that Joseph has not alleged sufficient facts to successfully bring Title VII or constructive discharge claims and that the facts alleged cannot sustain the balance of Joseph's claims.

## STATEMENTS OF UNDISPUTED FACT

1. Joseph was employed by Cinnamon Hills from 2005 through September 14, 2011 as a physical education teacher.[4]

---

[4] Compl. at ¶ 9, docket no. 3-1, filed July 25, 2012 in the Fifth District Court in and for Washington County, State of Utah, and removed to Utah District Court on August 3, 2012; Answer at ¶ 9, docket no. 9, filed August 22, 2012.

2. In 2009, Williams became the Director and Chairman of the Board at Cinnamon Hills.[5]

3. Joseph is Catholic. Williams is Mormon.[6]

4. During his employment at Cinnamon Hills, Joseph's performance reviews were always good and he was never denied a promotion or advancement.[7]

5. Joseph has not alleged, nor did he experience, a demotion, pay cut, transfer to unbearable working conditions, or any similar official adverse employment action.[8]

6. Cinnamon Hills' Employee Handbook contains an anti-harassment policy which prohibits harassment based on religion. It also contains a harassment complaint procedure, which requires any allegations of harassment to be reported to the Human Resources Department or the Program Director.[9]

**Allegations of Religious Discrimination**

7. In April 2011, the first incident of claimed religious harassment occurred when Joseph was wearing a BYU T-shirt. Joseph testified that Williams said to him: "Nice shirt. That will sustain your employment here."[10]

8. Subsequently, on his own accord, Joseph purchased other clothing affiliated with BYU and began wearing it to work at Cinnamon Hills.[11] Joseph alleges that Williams complimented him on his BYU clothing four or five times.[12]

---

[5] Defendants' Motion for Summary Judgment and Memorandum in Support (the "Motion") at ii, docket no. 18; Opposition at 1-2, docket no. 19; Decl. of Buff Williams at ¶ 2, docket no. 18-6, filed September 4, 2013.

[6] Joseph Depo. at 34:1-8, docket no. 18-1, filed September 4, 2013; Decl. of Buff Williams at ¶ 3, docket no. 18-6.

[7] Joseph Depo. at 44:23-45:25, docket no. 18-1.

[8] Motion at xvii, ¶ 38, docket no. 18; undisputed in Opposition, so deemed admitted per DUCivR 56-1(c)(iii).

[9] Decl. of Tara Smith at ¶ 16, docket no. 18-3, filed September 4, 2013; Motion, Exhibit 11, excerpt from Cinnamon Hills' Employee Handbook, Anti-Harassment Policy, docket no. 18-12, filed September 4, 2013.

[10] Joseph Depo. at 38:9-39:5, docket no. 18-1.

3

9. On July 7, 2011, Joseph's birthday, the second incident of claimed religious harassment occurred. Joseph claims that Williams told Joseph that he expected Joseph to be "baptized Mormon and temple worthy within one year." Joseph says he responded that there was a "zero percent probability of that."[13]

10. At the end of July 2011, the next incident of claimed harassment occurred. Joseph testified that he and Williams were walking across the Cinnamon Hills campus when Williams asked: "[Joseph], are you going to church Sunday?" Joseph replied: "Unlikely," to which Williams allegedly responded: "Maybe I will drive you to the general conference like I did [another employee]."[14]

11. In July or August 2011, Joseph claims that Williams made two other discriminatory comments. Williams allegedly asked Joseph: "You making church Sunday? It'd be good for you." Williams also allegedly told Joseph: "This Sunday you're going to make your appearance." Joseph testified that he made no response to these comments.[15]

12. Joseph admits that despite receiving and signing the Employee Handbook, he never followed the harassment complaint procedure.[16]

**Allegations of Physical Abuse**

13. Joseph claims that he suffered numerous confrontations with and abuses by Williams. These abuses and confrontations included:

---

[11] *Id*. at 39:19-40:9, docket no. 18-1.

[12] *Id*. at 39:6-9, docket no. 18-1.

[13] *Id*. at 40:20-41:1, docket no. 18-1.

[14] *Id*. at 35:9-36:13, docket no. 18-1.

[15] *Id*. at 36:14-37:23, docket no. 18-1.

[16] *Id*. at 115:12-116:11; 131:8-23, docket no. 18-1.

      a.        In 2009 or 2010, Joseph was asked by his immediate supervisor to wear a tuxedo provided by Cinnamon Hills when he was acting as master of ceremonies for an upcoming student award ceremony. Joseph argued with his immediate supervisor and refused to wear the tuxedo, and later complained to a fellow staff member, Mr. Downey, which was a violation of Cinnamon Hills' policy. After Joseph conducted the award ceremony in shorts and violated Cinnamon Hills' policy by complaining to Mr. Downey, he was called into Williams' office and reprimanded. Joseph claims that Williams accused him of going over Williams' head by speaking to Mr. Downey and threatened to fire Joseph if it happened again. Joseph also claims that during this incident, Williams pointed his finger at Joseph while yelling, but never made contact with Joseph.[17]

      b.        In February or March 2010, Joseph argued with Williams after Williams asked that the students exercise instead of playing games during the physical education period. Joseph admits that he responded to this request by inquiring into Williams' credentials and telling Williams that his request was "the most ridiculous idea [he] had ever heard." When Joseph refused to implement exercise instead of games, Joseph claims that Williams yelled and pointed his finger at Joseph, making contact with Joseph's chest once.[18]

      c.        On another occasion, Joseph claims that Williams, after seeing a student sitting on the side instead of participating in physical education, told Joseph that if the student was well enough to walk to class, that he was well enough to participate in physical education. Joseph admits that he and Williams argued about this instruction, and that

---

[17] *Id*. at 56:8-59:20, docket no. 18-1.

[18] *Id*. at 64:1-66:4; 67:20-68:18, docket no. 18-1.

Williams became angry and yelled and pointed his finger at Joseph's chest, making contact with his chest several times.[19]

    d.       Another incident of alleged abuse occurred when Williams became angry with Joseph because students were playing dodgeball, which was not allowed at Cinnamon Hills. Joseph claims that Williams pointed his finger at Joseph, but could not recall whether Williams made contact with Joseph.[20]

    e.       In February or March 2011, Williams required all of the teachers at Cinnamon Hills to meet with him and justify their employment because census numbers were going down. Williams concluded these teacher meetings by stating that all of the teachers could keep their jobs, but that he could not guarantee anything in the future.[21] Thereafter through August 2011, Williams required Joseph to continue reporting to him monthly to justify his employment; Joseph was the only employee required to do this.[22]

    f.       In April 2011, Joseph claims that after he complained to Cinnamon Hills' principal about a new policy instituted at Cinnamon Hills, Williams called Joseph into his office and yelled at Joseph about going over Williams' head to complain about the new policy. Joseph claims that while Williams was yelling at him, Williams was pointing his finger at Joseph, and that it made contact with Joseph's chest.[23]

    g.       In August 2011, Joseph complained after being instructed by the on-site supervisor to report to the library to help clean graffiti out of the textbooks. Joseph was

---

[19] *Id*. at 69:10-73:12, docket no. 18-1.

[20] *Id*. at 73:18-74:4, docket no. 18-1.

[21] *Id*. at 102:2-103:1, docket no. 18-1.

[22] *Id*. at 103:5-25, docket no. 18-1.

[23] *Id*. at 49:16-55:16, docket no. 18-1.

referred to Williams, who allegedly told Joseph that student enrollment was down, and that the complainers would be the first to be laid off.[24]

      h.      Also in August 2011, Williams called Joseph into his office and told Joseph that he was talking too much, and instructed him to act like a mute. Joseph was subsequently reprimanded by Williams for being too quiet at work.[25]

      i.      Finally, the last incident of alleged abuse or confrontation occurred on September 14, 2011. Joseph removed padded mats lining the walls and placed them on the gym floor at Cinnamon Hills as part of a physical education activity. The padded mats had a wood backing, which was placed directly on the floor and scratched it. When Williams discovered the scratches on the gym floor, he allegedly demanded that Joseph meet him in the gym to discuss the damage. Joseph claims that Williams used "mean words" to talk to him while pointing his finger at Joseph. During the finger pointing, Joseph claims that Williams' fingers jabbed him in the neck or lower chin area. During this confrontation, Joseph quit his job with Cinnamon Hills.[26]

14.      Joseph believes that Williams intended to make physical contact with him in the incidents where Williams' finger touched Joseph's chest or neck/lower chin area.[27]

15.      Joseph never suffered any physical injury from the times when Williams' finger made contact with him, though he did testify that he believed that Williams was trying to bully and intimidate him and that he suffered "cataclysmic emotional distress" from these incidents.[28]

---

[24] *Id.* at 59:21-61:19, docket no. 18-1.

[25] *Id.* at 104:20-107:23, docket no. 18-1.

[26] *Id.* at 77:13-78:1; 89:2-92:12, docket no. 18-1.

[27] *Id.* at 92:19-93:24, docket no. 18-1..

[28] *Id.* at 93:20-21; 95:17-96:16, docket no. 18-1.

Joseph never sought treatment for his purported emotional distress.[29] Joseph never told Williams that he was feeling emotional distress in these incidents. To the contrary, Joseph testified that he would always stay calm.[30]

      16.     Williams denies that he ever had any intent to touch Joseph with his finger.[31]

      17.     At no time did Williams ever say anything that would connect the alleged religious discrimination with any of the alleged physical abuse. Joseph admits that he was only speculating that the alleged abuse was connected to his religion.[32]

      18.     Williams did not single out Joseph for this allegedly abusive treatment. Most employees of Cinnamon Hills who met with Williams described him as abrasive and verbally attacking.[33]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[35] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[36] A dispute is genuine only "if the evidence is such that a reasonable jury

---

[29] *Id*. at 96:17-97:11, docket no. 18-1.

[30] *Id*. at 67:22-68:9, docket no. 18-1.

[31] Decl. of Buff Williams at ¶¶ 11-13, docket no. 18-6, filed September 4, 2013.

[32] Joseph depo. at 108:3-8; 112:3-6, docket no. 18-1.

[33] Jim Downey Depo. at 37:2-16, docket no. 18-9, filed September 4, 2013; Terry Shammo depo. at 16:2-17:2, docket no. 18-11, filed September 4, 2013.

[34] Fed. R. Civ. P. 56(a).

[35] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (internal quotations omitted).

[36] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

could return a verdict for the nonmoving party."[37] Title VII claims "can be resolved in a summary judgment proceeding if there are no genuine issues of material fact remaining for trial."[38]

## DISCUSSION

Joseph concedes that his claims for discrimination in violation of the Utah Antidiscrimination Act and for Title VII violations (against Williams in his individual capacity) should be dismissed.[39] Based upon these concessions, Joseph's causes of action for religious discrimination and constructive discharge in violation of Utah Code Ann. § 34A-5-108 and his Title VII claims brought directly against Mr. Williams are dismissed. Plaintiff's remaining causes of action are discussed in greater detail below.

### I. Title VII Religious Discrimination and Hostile Work Environment Claims.

A hostile work environment under Title VII occurs when conduct in the workplace "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment."[40] The workplace must be "permeated with discriminatory intimidation, ridicule, and insult" so "severe or pervasive" to adversely affect the victim's employment.[41] "Title VII does not establish a general civility code."[42]

In order to successfully bring a Title VII religious harassment claim, "a plaintiff must show that the environment was both objectively and subjectively hostile or abusive"[43] and that

---

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[38] *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1539 (10th Cir. 1995).

[39] See Opposition at 3, docket no. 19.

[40] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

[41] *Spague v. Adventures, Inc.*, 121 F. App'x 813, 816-17 (10th Cir. 2005).

[42] *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (citations omitted)

[43] *Id.* at 664 (internal quotations omitted).

9

the hostility stemmed from religious animus.[44] To survive summary judgment, Joseph's facts must support the inference of a religiously hostile work environment.[45] Joseph cannot meet this burden.

### A.  *Joseph's Claims Fail the Subjective Prong.*

The only admissible evidence of Joseph complaining about anything in this case is related to his complaints of the alleged physical and verbal abuse committed by Williams. But none of this alleged abuse was related to Joseph's religion. Williams may have been a difficult and abusive person to work for, but this does not create an actionable Title VII claim. The evidence and testimony simply does not show that any of the alleged physical and verbal abuse was in any way related to Joseph's religion. In fact, by Joseph's own admission, the abuse began some time before Williams was even aware of Joseph's religion.

Joseph also admits that he can only speculate that Williams' mistreatment was motivated by religious animus.[46] Speculation and "beliefs" are insufficient to survive summary judgment.[47] Even if Joseph's speculation was admissible evidence, it is undermined by his testimony that Williams treated most employees at Cinnamon Hills poorly, regardless of their religion.[48,49] Joseph's claims fail the subjective prong to successfully assert a Title VII claim for religious discrimination.

---

[44] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

[45] *Id.*

[46] Joseph Depo. at 108:1-8, docket no. 18-1.

[47] *Fritzsche v. Albuquerque Mun. School Dist.*, 194 F.Supp. 2d 1194, 1203 (D.N.M. 2002) (citing *U.S. v. Bowers*, 660 F.2d 527 (5th Cir. 1981)) (holding that speculative testimony is devoid of probative value).

[48] Jim Downey Depo. at 37:2-16, docket no. 18-9.

[49] *See Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (holding that because the plaintiff could not show that he was singled out for abuse arising from his race, his Title VII claims failed).

B.  *Joseph Did not Work in an Objectively Hostile or Abusive Environment.*

To evaluate the "objective" prong, all of the circumstances surrounding Joseph's work environment should be considered. These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[50] A few isolated incidents of sporadic remarks are insufficient to establish a hostile work environment.[51] "Instead, there must be a steady barrage of opprobrious comments."[52]

Taking all of Joseph's allegations as true, there were only five statements related in any way to religion, two of which occurred before Williams even knew that Joseph was Catholic and not LDS. These five statements were relatively innocuous and were not accompanied by any physical contact, finger pointing, or verbal abuse, and were not threatening or humiliating. The five remarks cannot objectively establish a "steady barrage" of comments, much less "opprobrious" ones. Joseph's own testimony establishes that the alleged religious remarks never unreasonably interfered with his work performance. Joseph testified that his performance reviews were always good and that he was never denied a promotion or advancement.[53] Even considering Joseph's statements in his affidavit[54] that he felt pressure from Williams to conform to LDS church expectations,[55] that he feared harassment from Williams,[56] and that he couldn't

---

[50] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

[51] *See Morris*, 666 F.3d at 666.

[52] *Morris*, 666 F.3d at 666.

[53] Joseph Depo. at 44:23-45:25, docket no. 18-1.

[54] Joseph Aff., docket no. 19-1, filed October 2, 2013.

[55] Joseph Aff. at ¶ 12, docket no. 19-1, filed October 2, 2013.

[56] *Id*.

enjoy his weekends and felt guilty if he didn't go to church on Sunday,[57] Joseph also stated that he "never had a negative write-up during [his] employment and had excellent periodic evaluations."[58] He also testified in that same affidavit that "I did all I could so that this harassment from Buff Williams did not affect how I interacted with the kids, my job performance working with the kids."[59] By Joseph's own admission, Williams' religious comments did not interfere with his work performance. Joseph's allegations do not subjectively or objectively establish religious discrimination or a hostile work environment to sustain a Title VII claim.

In response to Defendants' motion, Joseph made new claims that had never before been raised in his deposition. For example, notwithstanding the fact that Joseph was explicit in his deposition testimony that the first incident of alleged religious discrimination occurred in April 2011 (the BYU shirt incident), in response to Defendants' motion, Joseph claims that in December 2010, Williams told Joseph to bring a Mormon girl to a Christmas party.[60] This testimony contradicts his unequivocal deposition testimony. However, this additional fact does not elevate the purported discriminatory conduct into "severe and pervasive" territory.

In his Opposition, Joseph also claims that church meetings modeled after LDS sacrament meetings were held at Cinnamon Hills every Sunday, and that Williams was aware of these meetings. But again, even considering this new testimony, the allegations do not create an actionable Title VII claim because there is nothing severe and pervasive about any of Joseph's claims. Summary judgment in favor of Cinnamon Hills and against Joseph on his Title VII

---

[57] *Id.* at ¶ 13.

[58] *Id.* at ¶ 11.

[59] *Id.* at ¶ 14.

[60] *Id.* at ¶ 8.

claims is proper. Because the evidence fails to support Joseph's Title VII claims, whether the *Ellerth-Faragher* defense applies to Cinnamon Hills is moot.

## II. Constructive Discharge Claim Under Title VII.

A necessary component of a claim for constructive discharge under Title VII is a successful claim for religious discrimination under Title VII. If Joseph cannot state a successful Title VII claim for religious harassment, his constructive discharge claim related to that same conduct must also fail.[61] The facts alleged fail to support the inference that Joseph suffered religious discrimination or that the work environment at Cinnamon Hills was subjectively and objectively hostile based on Joseph's religion. Summary judgment against Joseph and in favor of Cinnamon Hills on his constructive discharge claim under Title VII is proper.

## III. Constructive Wrongful Termination in Violation of Public Policy.

A claim for wrongful termination in violation of public policy requires a showing of the following: (1) termination of a plaintiff's employment; (2) the existence of a clear and substantial public policy; (3) the plaintiff's conduct implicated that public policy; and (4) the plaintiff's termination and conduct in furtherance of the public policy are causally connected.[62] Joseph's claim fails for several reasons.

First, Joseph's employment was not terminated. The Utah Supreme Court has held that "[t]he concept of discharge is fairly concrete – either the employer actually terminated the employee or the employee resigned under circumstances so unbearable that no reasonable employee could tolerate them."[63] Joseph quit his job with Cinnamon Hills; he was not constructively discharged. Reasonable jurors have experienced working for difficult bosses and

---

[61] *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47 (2004).

[62] *See Rackley v. Fairview Care Ctrs., Inc.*, 2001 UT 32, ¶ 14, 23 P.3d 1022.

[63] *Touchard v. La-Z-Boy Inc.*, 2006 UT 71, ¶ 30, 148 P.3d 945.

would not find that Williams' personality deficiencies, yelling, finger pointing, and occasional finger contact so unbearable that Joseph had no option but to quit. Without termination of his employment, Joseph's constructive wrongful termination claim fails.

Second, there is no public policy protecting employees from working for a boss who yells and gets angry. As undesirable as Williams' alleged behavior was at times, his conduct does not create a cause of action. Joseph's reliance on OSHA and on executive orders issued by governors of the State of Utah is unavailing. OSHA's mandate for a workplace that is "free from recognizable hazards that are causing or likely to cause death or serious harm to employees"[64] does not apply to working for an erratic boss who engages in the conduct alleged by Joseph. The executive orders issued by Governors Leavitt[65] and Huntsman[66] are inapplicable because Cinnamon Hills is not a division or department of the State of Utah.

For these reasons, summary judgment against Joseph on his constructive wrongful termination in violation of public policy claims is proper.

### IV. Intentional Infliction of Emotional Distress.

A claim for intentional infliction of emotional distress requires proof that the defendant

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that the offend against the generally accepted standards of decency and morality.[67]

The first prong of this test requires Joseph to prove that Williams acted with the purpose of inflicting emotional distress. It is insufficient to prove that Williams intentionally acted in a

---

[64] 29 U.S.C. § 654, 5(a)(1).

[65] Executive Order, Policy on Domestic Violence within the Workplace, http://www.rules.utah.gov/execdocs/1999/e1999-06-04a.htm, last visited February 12, 2014.

[66] Executive Order, Violence Against Women in the Workplace, http://www.rules.utah.gov/execdocs/2005/ExecDoc97589.htm, last visited February 12, 2014.

[67] *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 25, 21 P.3d 198.

14

way that caused Joseph distress – the distress must have been the *intent* of the conduct, not a byproduct of it.[68] Joseph's testimony and the other evidence do not support this first prong. Joseph cannot prove that Williams intended to cause Joseph distress. Rather, his testimony establishes that Williams' actions were an effort to make Joseph follow directions and to not be insubordinate.

The facts also do not support the second prong. Williams' alleged conduct and behavior, while clearly not exemplary, is not so "outrageous and intolerable" that it "offend[s] against the generally accepted standards of decency and morality." Joseph's claim of intentional infliction of emotional distress fails as a matter of law.

### V. Assault and Battery.

In Utah, allegations of assault require proof that (1) the defendant acted, intending to cause harmful or offensive contact with the plaintiff, or imminent apprehension of such contact; (2) as a result, the plaintiff was put in imminent apprehension of harm or contact; and (3) the plaintiff suffered injuries proximately caused by the defendant's actions.[69] If the defendant's actions result in an actual touching of the plaintiff, they constitute a battery.[70]

The parties dispute whether Williams acted with the requisite intent to establish claims of assault and battery. Williams contends that it was an "incidental" touching that did not cause any harm to Joseph. Joseph claims that it was not incidental, but that Williams intended to contact Joseph's chest.[71] Joseph also testified that he did feel like harm was imminent at times.[72]

---

[68] *See id.* at ¶ 27.

[69] *See D.D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 3 (Utah Ct. App. 1994).

[70] *See id.*

[71] Joseph Depo. at 93:22-24, docket no. 18-1.

[72] Joseph Depo. at 66:20-25; 73:6-10; 89:11-14, 17-21, docket no. 18-1.

In construing the evidence in a light most favorable to Joseph, and in reviewing his testimony in context, a reasonable jury could find that Williams assaulted and battered Joseph. Therefore, summary judgment is improper on these claims, which, though relatively insignificant, will need to be tried to a jury.

**ORDER**

IT IS HEREBY ORDERED that Defendants' motion summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that summary judgment is GRANTED in favor of Defendant Cinnamon Hills on all Joseph's claims against it.

IT IS FURTHER ORDERED that summary judgment is GRANTED on all claims against Defendant Buff Williams except for Joseph's causes of action for assault and battery.

IT IS FURTHER ORDERED that summary judgment in favor of Defendant Buff Williams on Joseph's causes of action for assault and battery is DENIED because disputed issues of fact preclude summary judgment.

Signed February 13, 2014.

BY THE COURT:

_____
David Nuffer
United States District Judge